## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER J. DEMEO, : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | |
| THE VANGUARD GROUP, INC., : | NO. 13-122 |
| *d/b/a* VANGUARD, : | |
| Defendant. : | |
| : | |

### MEMORANDUM OPINION

**RUFE, J.**                                                                                             **JANUARY 21, 2014**

Before the Court are a motion for summary judgment by Defendant The Vanguard Group, Inc. ("Vanguard"), and Plaintiff Christopher DeMeo's response thereto. For the reasons below, the motion will be granted in part and denied in part.

### I.      Background[1]

DeMeo worked for Vanguard from 1997 until 2012. Starting in December 2009, he began to have problems at work with his team leader, Walt Schultz, and Schultz's supervisor, Clint Lodise. DeMeo alleges that Schultz and Lodise began to treat DeMeo unprofessionally in December 2009 after DeMeo declined to accept a position within his department at Vanguard in the communications field. This bad treatment intensified after DeMeo returned from leave he took pursuant to the Family and Medical Leave Act[2] ("FMLA") in September 2010.

On June 23, 2010, DeMeo received a mid-year performance appraisal. This appraisal rated his performance in three categories, with thirteen total sub-categories called

---

[1] The facts are adapted from the parties' Stipulated Material Facts, Doc. No. 14-4, unless otherwise indicated.

[2] 29 U.S.C. § 2601ff.

"competencies."[3] In a given category or competency, an employee can receive a rating of "Development Area," "Proficient," or "Towering Strength." Based on the assessment of his performance in each of the three categories, two were identified as Development Areas, and DeMeo was ranked as Proficient in one. DeMeo's competencies included five Development Areas, seven Proficients, and one Towering Strength. The mid-year appraisal also contained a narrative assessment that identified DeMeo's strengths and weaknesses as an employee.

In September 2010, De Meo was facing significant mental health problems related to challenges in his personal life and the health of his family members.[4] His difficulties with Schultz and Lodise had not improved, and on September 2, 2010, he requested and was granted FMLA leave.

DeMeo returned from FMLA leave on November 29, 2010. Schultz assigned DeMeo two new projects. Schultz conducted DeMeo's annual appraisal on December 21, 2010. Unlike the mid-year appraisal, the annual one included an overall rating in addition to the category and competency ratings. The overall determination was that DeMeo "Did Not Meet Expectations," the lowest of four possible ratings. The comments on the annual appraisal were similar to those on the mid-year evaluation.

In January 2011, the department DeMeo worked in undertook an initiative to have team leaders like Schultz meet with their subordinates in one-on-one formal coaching sessions. Schultz and DeMeo never had such a session. On January 27, 2011, DeMeo complained to Tammy Virnig, the Vanguard Principal responsible for the Retail division and Schultz's superior

---

[3] Pl.'s Resp. to Def.'s Mot. Summ. J. (Doc. No. 15) at 4.

[4] He was later diagnosed with bipolar disorder.

in the corporate hierarchy, that Schultz had not been conducting formal coaching sessions with DeMeo. Virnig responded that she would contact Schultz about the sessions.

On January 27 or 28, Schultz prepared a "Written Alert," cataloging several problems with DeMeo's performance related to the projects that had already been reviewed in DeMeo's mid-year and annual appraisals as well as the projects Schultz had assigned to DeMeo on his return from leave.[5] He drafted this alert even though shortly before writing it, a Vanguard employee who had worked with DeMeo on one of the new projects assigned to him after his leave sent Schultz an email glowing with positive assessments of DeMeo's contributions to the team.[6] The draft Written Alert was not issued to DeMeo.

On January 28, Schultz came to DeMeo's desk for a meeting, and led DeMeo outside their building where, according to DeMeo, Schultz became "aggressive," "lean[ed] in towards" DeMeo, "had his hands up in the air," "was breathing heavily and stuttering a bit[,] and was clearly upset with [DeMeo] for having spoken with Tammy [Virnig]."[7] After the confrontation, DeMeo suffered from a forty-five minute long panic attack.[8] Later that day DeMeo sought from Virnig a transfer to a position where he would not report to Schultz; she offered him one immediately, but DeMeo did not accept it because taking the position would have resulted in a demotion.

---

[5] *Id.* at 10. Supervisors issue Written Alerts to subordinates when they fail to meet expectations. The alerts may be issued to address isolated instances of deficient performance and are not scheduled in the same way the mid-year and annual appraisals are. Ex. P-11, Doc. No. 15-13.

[6] Ex. P-9, Doc. No. 15-11.

[7] Stipulated Material Facts at ¶ 72.

[8] Doc. No. 15 at 11–12.

DeMeo took non-FMLA[9] leave starting January 31, 2011. On the same day, a Vanguard employee who had worked with DeMeo on one of the projects that the Written Alert criticized sent an email to Schultz praising DeMeo's contributions to the team's efforts.[10] DeMeo never returned to work at Vanguard.

DeMeo has sued Vanguard arguing that it has violated the FMLA, the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA").[11] He alleges retaliation in violation of the ADA and FMLA and harassment in violation of the FMLA. Vanguard has moved for summary judgment on all of DeMeo's claims.

## II. Standard of Review

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[13] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[14]

## III. Discussion

### A. FMLA Retaliation

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision,

---

[9] Stipulated Material Facts at ¶ 82.

[10] Ex. P-10, Doc. No. 15-12.

[11] DeMeo's PHRA and ADA claims are coterminous and discussed together herein. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

[12] Fed. R. Civ. P. 56(a).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[14] *Id.*

4

and (3) the adverse action was causally related to her invocation of rights."[15] The Third Circuit has held that FMLA claims based on circumstantial evidence (as DeMeo's is) must be analyzed under a burden-shifting framework: Plaintiff has the burden of making a *prima facie* case that he has satisfied each element; Defendant then has the "minimal burden" of producing some legitimate reason for its employment action;[16] then, the burden shifts back to Plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [Defendant's] articulated legitimate reasons."[17] There is no dispute that DeMeo has satisfied the first element.

As to the second element, there is some ambiguity within the Third Circuit about what precisely constitutes an "adverse employment decision."[18] On this question, this Court agrees with others that have held that an adverse employment decision must be "materially adverse," meaning in the retaliation context that the decision "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[19]

DeMeo argues that after his FMLA leave, his managers increased his workload, would not meet with DeMeo when he wanted to, and gave him a false and harshly negative end of year performance review that caused him to receive less pay than he deserved. DeMeo further points to the sequence of events from January 27th–28th, beginning with DeMeo's encounter with

---

[15] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012).

[16] *Id.* at 302.

[17] *Id.*

[18] *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 218 n. 5 (3d Cir. 2013).

[19] *Morrison v. Carpenter Tech. Corp.*, 193 F. App'x 148, 154 (3d Cir. 2006) (Title VII case) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); for FMLA cases applying this standard, *see Incorvati v. Best Buy Co., Inc.*, No. 10-cv-1939, 2013 WL 3283956, at *4 n.5 (D.N.J. June 27, 2013) ("While the Third Circuit has never squarely held that this 'materially adverse' standard applies in the context of an FMLA retaliation claim, it has suggested that, were it necessary to address the issue, it would so hold." (collecting cases)).

Virnig about Schultz's lack of supervision and ending with Schultz's meeting with DeMeo that caused DeMeo's panic attack and resulted in his taking a second leave of absence not protected by the FMLA.[20] DeMeo has sustained his initial burden of stating a *prima facie* case that Vanguard took adverse employment action against him: he took FMLA leave; his relationship with his employers deteriorated; and shortly after the end of his FMLA leave, he felt compelled to take a second leave to avoid his supervisor.

The burden shifts to Vanguard, and Vanguard too has met its "minimal burden" of pointing to facts that could make a factfinder conclude that its actions were justified. Vanguard reads the mid-year and annual performance reviews as quite similar in their overall negative ratings, and it may be that Schultz's actions on January 28 were not adverse employment actions because they did not prevent DeMeo from continuing to complain about Schultz.

Since Vanguard has met its burden, DeMeo must point to some evidence that negates Vanguard's alleged justification. He has done so. In particular, Schultz's near-violent outburst on January 28, 2011, as DeMeo testified, could have cowed a reasonable employee into not complaining about retaliatory treatment. Indeed, in this case, Schultz's actions are alleged to have caused DeMeo to seek a transfer outside of Schultz's department. Schultz's behavior is

---

[20] Vanguard argues that DeMeo is prohibited from relying on those events because these alleged instances of retaliation are not pled in the complaint. Although it is indeed "procedurally inappropriate" to raise claims for the first time in a brief in opposition to a motion for summary judgment, that is not what Plaintiff has done here. *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 449 (W.D. Pa. 2008). Unlike cases where district courts have properly refused to address arguments raised in opposition memoranda, *Id.*, *Aldinger v. Spectrum Control, Inc.,* 207 Fed.Appx. 177, 180 n. 1 (3d Cir. 2006), *Miklos v. Principi,* No. 01–CV–0303, 2006 WL 240648, at *12 (W.D. Pa. Feb. 1, 2006), *Dogmanits v. Capital Blue Cross,* 413 F. Supp. 2d 452, 464 n.1 (E.D. Pa. 2005), *Garcia v. Henry Street Settlement,* 501 F.Supp.2d 531, 542–43 (S.D.N.Y. 2007), DeMeo's complaint did allege the facts in support of his claim that he was retaliated against in violation of the FMLA by virtue of Defendant's actions starting on January 27, 2011. Compl., Doc. No. 1, at ¶¶ 17–32 (describing events of January 27 and 28), ¶ 62 (incorporating those paragraphs into Count IV), ¶68 ("As averred in more detail above, following Plaintiff's return from FMLA leave in December 2010, Defendant harassed and retaliated against Plaintiff."). Requiring Plaintiff to add count after count of possible FMLA violations to his complaint would be unnecessarily burdensome both to the Court and to the parties. Both the facts and the theory of liability were sufficiently specific to have put Vanguard on notice of what it needed to defend itself against.

alleged to have resulted in part from DeMeo's complaint to Virnig about Schultz, giving rise to the inference that DeMeo reasonably would have feared making out or supporting a claim that Schultz had retaliated against him, and DeMeo left Vanguard for good on the same day that Schultz confronted him. DeMeo thus sustains his burden at this stage.

With respect to the final element of the claim, the same burden-shifting analysis applies. DeMeo has sustained his *prima facie* burden by alleging that the relatively close temporal proximity of his FMLA leave and his second leave from Vanguard suggests he was pushed out because of the first leave. Vanguard replies that any adverse employment actions taken were taken because of DeMeo's poor performance and that the January 28 confrontation resulted from DeMeo's complaint to Virnig about Schultz's lack of supervision, not his FMLA leave.

Again the burden reverts to DeMeo to point to facts in the record suggesting that it would be reasonable to infer that his FMLA leave caused the adverse employment action. DeMeo succeeds in this effort by pointing to behavior by Schultz that, drawing all reasonable inferences in favor of DeMeo, could be read to suggest that their relationship deteriorated after DeMeo returned from leave, starting with Schultz's negative year-end performance review and ending with the confrontation on January 28. A jury could reasonably infer from DeMeo's description of Schultz's behavior after DeMeo returned from leave that their relationship had deteriorated and that the most significant change that affected their interactions was DeMeo's leave. Although Vanguard argues that the year-end review was virtually identical to the mid-year review, that Schultz's draft Written Alert is of no value because it was never sent, and that Schultz's angry confrontation with DeMeo was not in reaction to FMLA leave, these are all arguments for possible inferences that may be drawn from the evidence, not ones that the evidence conclusively establishes. It is reasonable to infer, for example, from the positive emails that DeMeo's

colleagues sent to Schultz, that the draft Written Alert is false and is therefore evidence of Schultz's malice (even though it was not sent and therefore in itself is not an adverse employment action). And a jury could conclude based on DeMeo's reaction (a panic attack, request for a transfer, and a second leave) that Schultz's outburst on January 28 was more aggressive than his previous confrontations with DeMeo.[21]

For the reasons discussed above, Vanguard cannot prevail on its motion for summary judgment on DeMeo's FMLA claim.

### B. ADA Harassment

To prevail on his ADA and PHRA harassment claims, DeMeo must establish that: (1) he has a disability under the ADA; (2) he was harassed; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) that Vanguard knew or should have known of the harassment and failed to take prompt effective remedial action.[22] Vanguard argues that DeMeo cannot meet the last three elements of an ADA harassment claim.

#### 1. Element (3) (Causation)

Vanguard argues that there is no direct evidence of causation and that the circumstances of DeMeo's relationship with Schultz could not lead a reasonable jury to conclude that Schultz acted because of DeMeo's disability. Vanguard rightly states, "A personality conflict doesn't

---

[21] Vanguard argues that DeMeo's descriptions of conflicts with Schultz from before his leave and after it are virtually identical to one another. That is a question for a factfinder to be determined in part on the basis of the witness's demeanor as he describes the confrontations. Nor does it appear that DeMeo was asked in his deposition to compare the different confrontations. This Court is unwilling to rule that the confrontations were just as heated as one another on the basis of stipulated material facts that do not squarely address the issue, as Vanguard urges the Court to do.

[22] *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999).

ripen into an ADA claim simply because one of the parties has a disability."[23] But by the same token, brutish behavior before a supervisor learns of a disability (Schultz and DeMeo had had confrontations before DeMeo's FMLA leave) does not excuse a supervisor from the requirements of the Act after an employee claims the Act's protections. For the same reasons that a factfinder could conclude that Schultz acted in response to DeMeo's exercise of his rights under the FMLA, it could also conclude that he was prejudiced against DeMeo for exhibiting symptoms of depression and that his prejudice translated into abusive behavior.

2. Element (4) (Severe and Pervasive Conduct)

Vanguard's argument that the complained-of conduct was not severe or pervasive rests solely on the conclusion that the actions represent ordinary workplace disagreements. Vanguard argues that DeMeo cannot, as a matter of law, demonstrate that the conduct was "so objectively hostile as to alter the terms and conditions of [his] employment."[24] The Court does not agree.

To decide this Motion, the Court "must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[25] Again, the Court focuses on Schultz. The frequency and severity of his alleged bad behavior toward DeMeo increased in the time immediately following DeMeo's return from FMLA leave, and DeMeo has testified in his deposition facts sufficient to conclude that Schultz's January 28th confrontation, when he raised his voice, waved his arms, and was perceived as aggressive, was physically threatening. Moreover, a factfinder could

---

[23] *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997).

[24] *Medvic v. Compass Sign Co.*, No. 10-cv-5222, 2011 WL 3513499, at *12 (E.D. Pa. Aug. 10, 2011); *accord Hamera v. Cnty. of Berks*, 248 F. App'x 422, 425 (3d Cir. 2007).

[25] *Walton*, 168 F.3d at 667 (3d Cir. 1999).

conclude that Schultz's actions unreasonably interfered with DeMeo's performance, since DeMeo suffered a panic attack, requested a transfer, and left work immediately after the confrontation. Although the confrontation was the culminating event of alleged harassment, it was not the only event that made DeMeo uncomfortable at work, particularly with Schultz. DeMeo contends that Schultz had given him a bad performance review upon his return from leave and had failed to supervise him, facts which suggest Schultz's antipathy toward DeMeo. Because the parties genuinely dispute the significance of the facts related to Schultz and they are amenable to different interpretations, summary judgment is inappropriate at this time.

### 3. Element (5) (Knowledge)

Last, Vanguard asserts that it lacked knowledge of DeMeo's disability. But Vanguard does not adduce evidence to suggest that it lacked knowledge about DeMeo's circumstances. DeMeo requested "disability" leave of Schultz and told his superiors about the significant personal crises which led to the symptoms of his disability.[26] These facts put Vanguard "on notice that [DeMeo] might have a disability,"[27] which is sufficient at this stage.

Vanguard asserts that "there is no evidence that [DeMeo] ever mentioned to Mr. Schultz or Mr. Lodise [Schultz's supervisor] that he was taking 'short-term disability.'"[28] Vanguard is wrong: DeMeo made a note of a meeting with Schultz on September 2, 2010, when he "[i]nformed Walt [Schultz] of intentions to go on Short Term Disability."[29] Vanguard also argues that shortly after beginning FMLA leave, DeMeo was diagnosed with depression, but later, that diagnosis turned out to be wrong. It follows, according to Vanguard, that it could not have

---

[26] Ex. P-5, Doc. No. 15-7 at 2; Ex. P-1, Doc. No 15-3 (DeMeo Dep.) at 29:17–30:22.

[27] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 314 (3d Cir. 1999).

[28] Def's Reply Memo. (Doc. No. 16.) at 22.

[29] Ex. P-5, Doc. No. 15-7 at 2.

known of DeMeo's disability as it was not properly diagnosed. But this argument is excessively pedantic: DeMeo does not have depression, but he does have bipolar disorder.[30] To state a claim under the ADA, a plaintiff does not need to suffer medically accurate discrimination.

Because there are genuinely disputed material facts about each element that Vanguard challenges, it is not entitled to summary judgment on DeMeo's ADA harassment claim.

### C. ADA Retaliation

In order to prevail on a claim of retaliation in violation of the ADA, DeMeo must show "(1) that [he] engaged in an ADA-protected activity; (2) an adverse employment action by the defendant employer, either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse employment action."[31] Moreover, "[i]nformal charges or complaints of discrimination, as well as informal requests for accommodation, are sufficient to constitute protected activities for establishing a *prima facie* case of retaliation."[32]

DeMeo's alleged ADA-protected activities are his complaints to his supervisors about the different treatment he was receiving when he returned from FMLA leave.[33] In support of his argument he cites to several pages in his deposition, where he says that he and Virnig "had a conversation about my thoughts on how I was being treated after returning from FMLA and I felt that I was being discriminated against and not treated fairly. Q. And your belief was that because you had taken leave? A. Correct."[34] He also testified that his "biggest concern was after returning

---

[30] Ex. C, Doc. No. 16-3 at 3.

[31] *Kaniuka v. Good Shepherd Home*, 05-cv-2917, 2006 WL 2380387, at *9 (E.D. Pa. Aug. 15, 2006); *accord Fendrick v. PPL Servs. Corp.*, 193 F. App'x 138, 142 (3d Cir. 2006).

[32] *Kaniuka,* 2006 WL 2380387*,* at *9.

[33] Doc. No. 15 at 9, 12.

[34] Ex. P-1, Doc. No. 15-3 at 312:4–11.

from the leave, the treatment was different."[35] Additionally, he complains that when he requested a lateral transfer to a position not supervised by Schultz, Virnig offered him a demotion. When she offered the demotion to a position where DeMeo could begin work immediately and where Schultz would not supervise, DeMeo complained "[t]hat I felt that that wasn't fair, that I would have to take a demotion for going out on FMLA."[36]

The problem with DeMeo's argument is that he can only point to evidence that he complained about treatment for taking FMLA leave. Nowhere did he complain that he was retaliated against because of his disability (bipolar disorder). To be sure, he took his FMLA leave at least in part because of his disability, but the Court cannot infer discrimination because of a disability without supporting evidence. It is entirely plausible that Schultz and Virnig (to the extent she can be said to have retaliated at all) retaliated against DeMeo because he took leave and only because he took leave, and DeMeo does not point to any evidence that the alleged retaliatory actions were specifically in response to DeMeo's disability.

Because of the lack of evidence that Vanguard retaliated against DeMeo because of his disability, the Court will grant Vanguard's motion for summary judgment as to the ADA and PHRA retaliation claims.

### IV. Conclusion

For the reasons stated above, Vanguard's Motion for Summary Judgment is granted in part (with respect to the ADA retaliation claim) and denied in part (with respect to DeMeo's remaining claims). An appropriate Order follows.

---

[35] *Id.* at 322:6–8.

[36] Ex. P-1, Doc. No. 15-3 at 381:4–7.